STATE of Missouri,
Plaintiff–Respondent,

v.

Tommie Eugene HORN,
Defendant–Appellant.

No. WD 41303.

Missouri Court of Appeals,
Western District.

Sept. 12, 1989.

Rehearing Denied Oct. 31, 1989.

James F. Speck, Kansas City, for defendant-appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

Before NUGENT, C.J., CLARK and FENNER, JJ.

PER CURIAM:

A jury found defendant Tommie Eugene Horn guilty of the sale of a schedule II controlled substance in violation of Missouri law. He appeals alleging that the trial court erred in overruling his motion for judgment of acquittal at the close of the evidence in that evidence did not warrant the submission of the case to the jury.

On review, we consider the evidence, both direct an circumstantial, and all reasonable inferences generated by that evidence, in the light most favorable to the verdict and disregard all evidence and inferences to the contrary. *State v. Rodden,* 728 S.W.2d 212, 213 (Mo.1987) (en banc), *citing State v. Guinan,* 665 S.W.2d 325, 327 (Mo.1984) (en banc), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984).

The evidence, viewed in the light most favorable to the verdict, revealed the following facts:

Deputy Bryan Atkins, on loan from the Webster County sheriff's office, worked an undercover operation for the Sedalia Police Department for two months in 1987. During that time, he lived in Sedalia and worked with a confidential informant, Allen Collins.

Deputy Atkins and Mr. Collins met at the deputy's apartment the morning of September 4, 1987. Before he arrived at the apartment, the informant did not know the nature or the quantity of the drug the deputy expected to buy, the price he might pay for it, or where he hoped to find it. Deputy Atkins patted Collins down to be certain that he had no drugs or money. Then they went to Mark's Speed Shop, a garage, to try to buy some "crank", a methamphetamine.

They arrived at the shop at about 12:30 p.m. They entered the office of the garage and talked with Mark Waller. After some casual preliminary conversation, Deputy Atkins turned the conversation to drugs, "crank" in particular. He asked Mr. Waller if he could buy an "eight ball" (3.5 grams of methamphetamine). Mr. Waller said that he did not have it in the shop but that he would make a phone call to get it. He called directory information and asked for the number of Tom's Barbecue in Sedalia. Next he dialed a number and asked for "Tom." He said, "Tom, I need you to bring a package over as soon as possible."

The call completed, he told Deputy Atkins that he would have to wait forty-five minutes. The phone call to Tom's Barbecue was made at about 1:15 p.m.

Deputy Atkins and the informant waited for a little over forty-five minutes. About 2:00 o'clock defendant Horn arrived, and Waller told everyone else to leave the office. Deputy Atkins and the informant waited outside. The defendant came back out of the office and went to his car, opened the trunk, removed a rifle case and two pistols and took them into the office. Then Mark Waller shouted, "Collins!" Informant Collins went back into the office, and in less than a minute returned with a "baggie" containing a small amount of methamphetamine. He told Deputy Atkins that he needed money for Waller. The deputy gave him $250, and he returned to the office. In about fifteen seconds he emerged and he and Deputy Atkins departed. The defendant's car still stood where he had parked it.

According to the defendant's version, Waller called him about some guns that the defendant had to sell to avoid violating his parole. His parole officer had told him in May, 1987, to get rid of the guns. The defendant said that he had talked to Waller about the guns the day before; Waller had said that he would get back to him. In fact, the defendant testified, Waller called him at work about 1:15 p.m. and asked him to "bring the stuff by so he could look at it." The defendant left work, went home, got the guns and went to Mark's garage.

When he arrived, the defendant said, he found Waller, Allen Collins, Deputy Atkins, and another man there. Waller asked everyone to leave and then sent the defendant back out to his car to get the guns. When he went back in, the defendant wiped the guns off while Waller went to the door of the office and called out someone's name. He did not see or hear who answered or what happened. Twice Waller briefly went to the door, and then the defendant and Waller got down to the business of the guns. When the defendant left, he did not see any of the other people.

The state's case is based entirely upon circumstantial evidence. Basically, the officer and his informant went to a known drug dealer who said that he did not have the "crank" but that he could call someone and get it. The dealer immediately called someone named "Tom" and asked him to bring "a package as soon as possible." The dealer said it would be about forty-five minutes, and in about forty-five minutes defendant Horn showed up. The dealer then closeted himself with the defendant. Then the defendant came out to his car and took a rifle case and two pistols from the trunk and carried them into the dealer's office. The dealer called the informant in and he made the buy. Because the informant could not be found to testify and the dealer was unavailable because he would invoke his Fifth Amendment privilege against self-incrimination, only defendant Horn testified about what happened inside the office after he arrived. Of course, the jury was free to disbelieve and disregard all or any of his testimony.

Circumstantial evidence has no less inherent probative value than direct evidence; although direct and circumstantial evidence may equal each other in weight, they may not equal each other in all respects. *State v. Lasley*, 583 S.W.2d 511 (Mo.1979) (en banc). Circumstantial evidence requires a pattern of logical inference in order to determine the ultimate facts. *Id.* To warrant submission to the jury, the substantial evidence adduced must permit any rational trier of fact to find all the essential elements of the crime beyond a reasonable doubt. *State v. Priest*, 660 S.W.2d 300, 304 (Mo.App.1983), *citing Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The defendant here only challenges the sufficiency of the evidence to establish that he knowingly acted with Mark Waller in making the sale.

Because the verdict in this case rests on circumstantial evidence, the facts and circumstances upon which the state relies must accord with each other and with the state's hypothesis of the defendant's guilt. *Rodden*, 728 S.W.2d at 213, *citing*

*State v. Goddard,* 649 S.W.2d 882, 884 (Mo.1983) (en banc), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 689 (1983). The evidence must also point so clearly and satisfactorily to the defendant's guilt as to exclude every reasonable hypothesis of his innocence. *State v. Franco,* 544 S.W.2d 533, 534 (Mo.1976) (en banc). Nevertheless, the circumstances need not absolutely prove guilt nor demonstrate the impossibility of innocence—the mere existence of other possible hypotheses does not remove the case from the jury. *Rodden,* 728 S.W.2d at 213. *citing State v. Goddard,* 649 S.W.2d 882, 884 (Mo.1983) (en banc), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 689 (1983). Therefore, the characterization of the defendant's hypothesis becomes the key. The state's evidence must rule out every reasonable hypothesis, not all possible hypotheses. If a hypothesis is merely possible, that is, remote, it will not warrant the granting of a motion for acquittal. If courts directed acquittals whenever they believed the evidence failed to exclude every hypothesis, they would preempt the function of the jury in a criminal case. *State v. Thomas,* 452 S.W.2d 160, 162 (Mo. 1970).

■ Measured by this test, the question becomes whether we can or cannot reconcile the evidence relied on by the state with a reasonable hypothesis of innocence. *State v. Morse,* 515 S.W.2d 608, 610 (Mo. App.1974). A verdict based on suspicion, conjecture or surmise, however persuasive, will not support a criminal conviction. To prove a conviction, some evidence must associate the defendant directly with the commission of the crime. *State v. Lane,* 497 S.W.2d 207, 209 (Mo.App.1973). It must indicate that the accused affirmatively participated in the criminal venture or consciously shared or associated in the act. *State v. Miller,* 536 S.W.2d 524, 527 (Mo. App.1976). The defendant's mere presence at the scene of the crime or his mere opportunity to commit the crime will not, without more, constitute circumstantial evidence sufficient to justify a conviction. *Lane,* 497 S.W.2d at 209.

■ The reviewing court must consider each case in light of its own particular facts and circumstances. *State v. Franco,* 544 S.W.2d 533, 536 (Mo.1976) (en banc). In this case we find something more: Mark Waller specifically told "Tom" to bring "a package." He made the call immediately after he told deputy Atkins that he could make a call and get the "crank." The jury could reasonably have believed it highly unlikely that "package" referred to a rifle in its case and two pistols. Waller then told Deputy Atkins he would have to wait forty-five minutes for the drug. About forty-five minutes later the defendant arrived. That evidence sufficiently connected the defendant directly with the crime—the sale of methamphetamine that took place shortly after he arrived.

The defendant's first of three hypotheses of innocence, that Waller slipped out to make another phone call and then sneaked out again to get the drugs, does not seem reasonable in light of the other evidence. Deputy Atkins could not remember Waller's leaving the office for any amount of time. Moreover, defendant adduced no evidence of a nearby telephone that Waller might have used to make such a second call, and the evidence gives no hint of the arrival of any other person who might have delivered the contraband. Thus, the only evidence supporting the defendant's first hypothesis is that Waller could have and might have left the office at sometime within the forty-five minutes period. No one testified that in fact he did so to support defendant's speculation that he might have done so. The first hypothesis must fail because it bottoms itself on speculation.

The defendant's second hypothesis of innocence, that Waller sent someone in the garage for the "crank," also taxes credulity, considering that immediately after the phone call Waller told Deputy Atkins that he would have to wait forty-five minutes and that the deputy could not remember Waller's leaving for any significant amount of time.

Other evidence refutes defendant Horn's third and only reasonable hypothesis. He hypothesizes that Waller could have been

lying about not having any "crank" in the garage. Deputy Atkins testified that he believed Waller because Waller had said that, fearful of an imminent search, he had cleaned the place out. The defendant presented an expert witness who said that drug dealers often lie about whether they have any drugs on the premises. The state presented two officers who have been engaged in undercover operations in rural areas and in Sedalia who said that, while major dealers may lie, they did not think that a dealer would lie under those circumstances. Furthermore, one officer stated that, knowing Waller, he did not think that he was lying in this case. In light of the evidence, the jury could reasonably have found that at that time Waller had no methamphetamine at the garage. The telephone call to "Tom" asking him to "bring over a package as soon as possible" coupled with his appearance at the predicted time links defendant Tommie Horn directly with Waller and the sale.

Although the evidence is circumstantial, it forecloses any reasonable hypotheses of innocence and is consistent with the finding that the defendant knowingly acted together with Waller in the sale of the methamphetamine.

Accordingly, we affirm the judgment.