STATE of Missouri, Respondent,

v.

Larry COBB, Appellant.

Larry COBB, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 16920, 17290.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 10, 1991.

Motion for Rehearing or Transfer to
Supreme Court Denied
Dec. 27, 1991.

J. Gregory Mermelstein, Columbia, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant Larry Cobb, tried as a prior offender, § 558.016.2, RSMo 1986, was found guilty by a jury of the class B felony of selling more than five grams of marijuana, § 195.211, RSMo Cum.Supp.1989.[1] The trial court sentenced appellant to ten years' imprisonment. Appellant brings appeal 16920 from that judgment and sentence.

Appellant thereafter filed an action under Rule 29.15[2] to vacate the conviction. The circuit court conducted an evidentiary hearing, made comprehensive findings of fact and conclusions of law, and entered an order denying relief. Appellant brings appeal 17290 from that order.

We consolidated the appeals, Rule 29.-15(*l*), but address them separately in this opinion.

## Appeal 16920

■ Six of the eight points presented by appellant's brief pertain to appeal 16920. We first address point VI. It avers appellant was denied a full panel of veniremen from which to make his peremptory challenges. The point arises from the following facts.

On the morning of trial, before the venire was called into the courtroom, the trial court determined only 26 veniremen had arrived. Appellant's lawyer ("defense counsel") moved orally for a continuance so the court and counsel would not "have to be concerned about the strikes for cause."

The trial court told defense counsel the court would grant every legitimate challenge for cause, and if insufficient jurors remained for peremptory challenges the court would declare a mistrial.

Defense counsel responded, "Okay," and acknowledged the defense was ready to proceed.

After voir dire, defense counsel challenged three veniremen for cause. The trial court granted the challenges, leaving 23 veniremen. The trial court told the prosecutor the State could give up one of its peremptory challenges[3] or the court could discharge the jury. The court added that appellant would be entitled to his "full six challenges."

The prosecutor stated he would give up a peremptory challenge and "take this jury panel as it is."

Defense counsel voiced no objection to the scheme. The prosecutor exercised peremptory challenges against five members of the venire. Defense counsel thereafter exercised six peremptory challenges, leaving a jury of twelve which tried the case.

Appellant maintains the above procedure was constitutionally defective in that it

---

**1.** Subject to certain exceptions immaterial here, § 195.211 makes it unlawful to *deliver* a controlled substance. "Deliver" includes sale. § 195.010(10), RSMo Cum.Supp.1989.

**2.** Rule references are to Missouri Rules of Criminal Procedure (1990).

**3.** Section 494.480, RSMo Cum.Supp.1989, reads, in pertinent part:

"1. ....

2. In all criminal cases, the state and the defendant shall be entitled to a peremptory challenge of jurors as follows:

(1) ....

(2) In all other cases punishable by imprisonment in the penitentiary, the state shall have the right to challenge six and the defendant six;

....

4. ... from the list of jurors found by the court qualified to serve in the case, the state shall announce its peremptory challenges first and the defendants thereafter."

forced him to make his peremptory strikes from an "incomplete panel." He cites *State v. Anderson*, 620 S.W.2d 378, 380[1] (Mo.1981), which holds an accused is entitled to a full panel of qualified impartial veniremen before the peremptory challenge process commences.

The State responds that appellant failed to preserve the complaint for appellate review in that he registered no objection when the venire was reduced to 23 and the trial court announced it would allow the State to waive a peremptory challenge and proceed with the trial. In support of this contention, the State cites *State v. Lawrence*, 791 S.W.2d 729 (Mo.App.1990). There, the accused argued on appeal that the prosecutor had improperly exercised peremptory challenges against three black members of the venire. The Eastern District of this Court noted the accused made no objection until after the jury was seated and the trial court had excused the surplus veniremen. The Eastern District held the lack of timely objection waived the right to challenge the jury panel. *Id.* at 730[2].

While the circumstances in *Lawrence* are not identical to those here, the rule that a timely objection is required to preserve an issue for appellate review is equally applicable. Here, voir dire began with more than enough veniremen to allow each side its six peremptory challenges. Had there been no more than two successful challenges for cause, enough veniremen would have remained for six peremptory challenges by each side. It was only when appellant's third challenge for cause was granted that the venire was reduced to 23. It was then that the trial court announced the State could give up a peremptory challenge or the court could discharge the jury.

At that juncture defense counsel said nothing, accepted the jury list after the prosecutor made five peremptory challenges, struck six veniremen peremptorily, and proceeded to trial without objection. Given these circumstances, the trial court could have properly assumed the procedure was acceptable to appellant.

As the State points out, had 24 veniremen remained after the challenges for cause, six peremptory challenges by the State would have reduced the venire to 18 before appellant exercised his peremptory challenges. Here, five peremptory challenges by the State likewise reduced the venire to 18 before appellant exercised his peremptory challenges. Inasmuch as there was no objection by defense counsel to the latter procedure, the trial court obviously inferred appellant was satisfied with it and wanted to proceed with trial.

We hold point VI was not preserved by timely objection at trial. Consequently, it is reviewable only as plain error.

■ Plain error relief is granted only when an error so substantially affects the accused's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Burgess*, 800 S.W.2d 743, 746[7] (Mo. banc 1990).

That did not occur here. After the prosecutor's peremptory challenges, appellant received a jury list of 18 remaining veniremen, exactly what he would have received had the prosecutor peremptorily challenged six veniremen from a list of 24. While we neither endorse the procedure here nor imply what our holding would have been had the issue been preserved, we find no manifest injustice or miscarriage of justice warranting plain error relief.

■ We next address point I, which avers the evidence "was insufficient to sustain the jury's finding of guilt beyond a reasonable doubt." On this issue we accept as true all evidence and inferences supporting the verdict and disregard contrary evidence and inferences. *State v. Evans*, 802 S.W.2d 507, 514[12] (Mo. banc 1991). We determine whether the evidence, so viewed, was sufficient to make a submissible case, *id.*, from which a reasonable juror might have found appellant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55[3] (Mo. banc 1989).

The purchaser of the marijuana was Vernon Moss. At the time of the buy, he was awaiting sentencing for two burglaries and a stealing. He was voluntarily assisting

law enforcement officers in drug investigations, hoping for leniency.

Moss arranged a marijuana purchase for 7:00 a.m., October 27, 1989, with Terry Tipton and Rhonda Tipton. It was to take place at the latters' residence in Joplin.

About 6:00 a.m., that date (October 27), Moss met with Detective Lance Nichols of the Joplin Police Department and other officers to plan the operation. Nichols obtained $350 "buy money" from a superior officer and photocopied each bill to record its serial number. Moss was searched to confirm he was carrying no drugs. A "body mike" was concealed on him so officers outside the Tiptons' residence could hear what was occurring. The officers' cue to enter was to be when Moss began counting the money aloud before handing it to the seller.

Officer Vic England, carrying the "buy money," rode with Moss in the latter's car to the Tiptons' residence. They arrived about 6:55 a.m. Moss went to the front door alone, knocked, and was admitted inside by Rhonda. Moss' testimony about what occurred next is the basis of appellant's point II (discussed later). Moss testified:

"... I asked them if a person had showed up yet with the quarter pound that I was supposed to buy, and they told me no one had showed—

[Defense counsel]: Objection, Your Honor, that's hearsay.

The Court: Overruled.

Q. Go ahead.

A. Right after I got inside, someone had knocked on the back door, Rhonda went to the back door, she came back. And then Terry went to the back door, he came back up front with the white towel."

Moss avowed Terry Tipton did not have the towel when he went to the back door. Asked whether anything was said about the person at the back door, Moss testified: "He [Terry] just said that the person at the back didn't want to be seen by me." This answer is the basis of appellant's point III (discussed later).

Moss recounted Terry opened the towel, revealing four bags of a substance Moss believed was marijuana. Moss took one bag outside and showed it to England. England examined it and confirmed it was marijuana. England then gave Moss the $350.

Moss returned inside, examined the other three bags, and "agreed to make the deal." Moss counted the money, handed it to Terry, and watched as Terry went to the back door, stuck his arm out, and handed the money and towel to someone outside. Moss did not see whom.

Terry then returned with a paper sack in which Moss could carry the bags of marijuana. At that point, officers entered and arrested the Tiptons.

During the operation, Lieutenant Dale Owen of the Joplin Police Department was positioned near the back of the Tiptons' residence. When he heard Moss counting the money, he (Owen) moved closer and saw one individual leaving the back door. Owen identified himself as an officer and stopped the individual, who turned out to be appellant. Owen arrested appellant, searched him, and discovered currency in one of his pockets. Observing the currency was "tens and twenties," the same denominations as the "buy money," Owen seized it.

Appellant was the only person Owen saw at the back of the Tiptons' residence during the operation.

Later, at headquarters, Owen examined the currency seized from appellant. It totaled $350 (14 $20 bills and 7 $10 bills). The serial numbers were identical to those of the currency supplied Moss for the purchase.

The weight of the marijuana bought by Moss exceeded 100 grams.

Neither of the Tiptons testified.

Appellant presented no evidence.

Appellant maintains the evidence was insufficient to support a finding of guilty in that (1) there was no showing he ever possessed the towel containing the marijuana bought by Moss, and (2) the proof did not exclude the possibility that the marijua-

na came from a supply the Tiptons kept in their house or from another person at the back door.

Appellant emphasizes the following passage from Moss' testimony:

"Q. In fact, you knew [the Tiptons] well enough that you knew where their personal stash was?

A. I just knew that the times I had been over there that they kept it in the living room right next to them in a white box. I didn't know where it was after—when they went to bed or anything.

Q. But you knew that it was located in the house and you knew what they kept it in?

A. Right."

Appellant's argument assumes the term "personal stash" in the above colloquy means marijuana. He fails to direct our attention anyplace in the record confirming this.

■ Appellant reminds us the prosecution must prove beyond a reasonable doubt that an accused committed the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073[8], 25 L.Ed.2d 368 (1970). Appellant correctly notes that where evidence of guilt is wholly circumstantial, the facts and circumstances relied upon by the State to establish guilt must not only be consistent with each other and with the hypothesis of guilt, but they must also be inconsistent and irreconcilable with innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence. *State v. Taylor*, 445 S.W.2d 282, 284[2] (Mo. 1969). However, *Taylor* adds that the circumstances need not be absolutely conclusive of guilt, nor must they demonstrate an absolute impossibility of innocence. *Id.* at 284[5].

The circumstances here are remarkably similar to *State v. Horn*, 777 S.W.2d 656 (Mo.App.1989). There, an undercover officer and his informant went to a shop to try to buy methamphetamine. They talked to one Waller, who said he had none in the shop but would make a phone call to get it. Waller dialed a number, asked for "Tom," and instructed him to "bring a package

over as soon as possible." Waller told the officer he would have to wait 45 minutes. Some 45 minutes later Tommie Horn arrived at the shop. Waller told the officer and the informant to leave the office. While they waited outside, Horn exited, went to his car, and removed a rifle case and two pistols from the trunk. He carried the items into the office. Waller then summoned the informant. The informant entered the office, and in less than a minute returned carrying a "baggie" of methamphetamine. The informant told the officer he needed money for Waller. The officer gave the informant $250, and the latter returned to the office. Some 15 seconds later the informant emerged, and he and the officer departed. Horn's car remained where he had parked it. Horn was found guilty by a jury of selling the methamphetamine. On appeal, he alleged the evidence did not warrant submission to the jury.

The Western District of this Court held otherwise. Rejecting Horn's contention that Waller could have been lying when he denied having methamphetamine in the shop, the opinion held Waller's call to "Tom" asking him to bring a package as soon as possible, coupled with Horn's appearance at the predicted time, linked Horn directly with Waller and the sale. *Id.* at 660. Such evidence, said the opinion, forecloses any reasonable hypothesis of innocence and is consistent with the finding that Horn knowingly acted with Waller in the sale. *Id.*

The circumstances here are at least as strong, if not stronger, than *Horn*. Here, Moss arranged the purchase for 7:00 a.m., October 27, at the Tiptons' residence. Moss arrived about 6:55 a.m. Almost immediately after he entered, someone appeared at the back door. Terry Tipton went to the back door, then returned with a towel containing bags of marijuana. When Moss handed the $350 to Terry, Terry returned to the back door, stuck his arm out, and handed the money and towel to someone outside. During the operation, Lieutenant Owen saw only one person at the back of the Tiptons' residence—appellant. Owen apprehended appellant shortly after

hearing Moss count the money. Appellant had the money in his pocket.

Appellant points out the evidence fails to show where Terry got the towel, and likewise fails to show appellant was carrying a towel when apprehended. Consequently, says appellant, it cannot be concluded beyond a reasonable doubt that the marijuana Moss bought came from appellant or that the money was given to appellant in exchange for marijuana.

We disagree. Someone arrived at the Tiptons' back door at the scheduled time for the sale. Terry presented the marijuana to Moss in a towel immediately after going to the back door. The $350 and the towel were thereafter taken to the back door by Terry and handed to someone outside. The jury could properly infer from this evidence that the person or persons at the back door brought the marijuana to the Tiptons' residence in the towel. Were it otherwise, there would have been no apparent reason for Terry to hand the towel to the person outside the back door. It is also significant that Terry simultaneously handed the person outside the back door the $350 Moss had paid for the marijuana. Had that person not supplied the marijuana, there would have been no apparent reason for Terry to turn over the $350.

Appellant was the only person Lieutenant Owen saw at the back of the Tiptons' residence during the operation. When apprehended, appellant was carrying the $350 Moss had handed Terry moments earlier.

It is inferable Lieutenant Owen was unaware a towel had any role in the case at the time he arrested appellant. Owen did not observe what occurred in the Tiptons' residence. There is no showing of when (if ever) he learned the marijuana had been in a towel or that a towel had been handed to someone outside the Tiptons' back door along with the $350. According to Owen, at the time of appellant's arrest (inferably soon after 7:00 a.m.), it was dark and overcast, and there were no street lights near the arrest site. It could be logically assumed that appellant, upon receiving the $350, had no further need of the towel and abandoned it somewhere behind the Tiptons' residence.

Regarding appellant's contention that the evidence failed to exclude the possibility that the marijuana came from the Tiptons' "personal stash," we note there was no evidence the Tiptons customarily kept in excess of 100 grams for their own use. Furthermore, Moss testified the Tiptons kept their "personal stash" in a white box in the living room. There was no contradictory testimony. The evidence showed the marijuana bought by Moss was obtained when Terry went to the back door. Terry did not obtain it anywhere in the living room.

We hold the evidence sufficient to support the verdict. Accordingly, point I is denied.

■ Appellant's point II asserts the trial court erred in overruling appellant's objection to Moss' testimony that after he arrived at the Tiptons' residence, he asked whether anyone had shown up with the quarter pound of marijuana he was supposed to buy and the Tiptons replied "no one had showed." Appellant argues the quoted phrase violated the hearsay rule in that it was offered to prove the marijuana was being brought to the Tiptons' residence by a third person. Appellant contends he was prejudiced by the testimony in that it was the only evidence linking him with the towel containing the marijuana bought by Moss from the Tiptons. Consequently, says appellant, the hearsay statement may have been decisive in the jury's determination of guilt.

Assuming, without deciding, that the testimony was inadmissible hearsay, we find no prejudice. The evidence showed that immediately after Moss entered the Tiptons' residence, someone knocked on the back door. Terry, who was not carrying a towel when he went to the back door, returned with the towel containing the marijuana. After Moss paid Terry the $350 for the marijuana, Terry took the money and the towel to the back door and handed both to someone outside. Appellant was the only individual observed by Lieutenant

Owen outside the Tiptons' back door during the transaction.

This evidence demonstrates the alleged hearsay statement was not the only evidence linking appellant with the marijuana Moss bought. The jury could reasonably infer that inasmuch as the sale did not take place until Terry went to the back door and returned with the marijuana, the marijuana was supplied by the person outside the door. The only person observed outside the door was appellant, who possessed the "buy money" when apprehended.

■ A conviction will not be reversed because of improper admission of hearsay which is not prejudicial to the accused. *State v. Leisure,* 796 S.W.2d 875, 879 (Mo. banc 1990). The burden is on the accused to show both the error and the resulting prejudice before reversal is warranted. *Id.* Appellant has failed to show prejudice. Point II is denied.

■ Point III charges the trial court with plain error in receiving Moss' testimony that Terry Tipton said the person "at the back" did not want to be seen by Moss. Appellant maintains this testimony violated his right to confront and cross-examine witnesses against him and was hearsay. Appellant concedes the point was not preserved in the trial court, consequently review is limited to plain error.

Appellant argues the testimony resulted in manifest injustice in that it supplied the link connecting him with the marijuana Moss bought. Appellant reasons the jury could have inferred the person at the back door wanted to remain unseen because such person was the marijuana supplier. Without that evidence, says appellant, there was nothing connecting him with the towel containing the marijuana.

Assuming, arguendo, that the testimony was inadmissible hearsay, we find no basis for plain error relief. As discussed in addressing point II, there was ample evidence other than hearsay from which the jury could have found (a) the marijuana Moss bought was supplied by the person outside the Tiptons' back door, and (b) such person was appellant. Consequently, no manifest injustice resulted from the testimony complained of in point III.

■ Point IV avers the trial court committed plain error in failing to declare a mistrial *sua sponte* when the prosecutor, during closing argument, characterized appellant as a "bulk" supplier of drugs and a "professional drug dealer" of whom jurors are afraid. According to appellant, the argument was unsupported by evidence, implied he had committed uncharged drug sales, belonged to a class of professional drug sellers, indicated the prosecutor had special knowledge of appellant's guilt, and placed the jurors in personal fear of him.

Appellant concedes no objection was made to the argument at trial, thus the point is before us for only plain error review.

■ An appellate court should rarely grant relief on assertions of plain error as to closing argument. *State v. Clemmons,* 753 S.W.2d 901, 907 (Mo. banc 1988), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). This is because, absent objection and request for relief, the trial judge's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *Clemmons,* 753 S.W.2d at 907–08.

■ Although a prosecutor may not express an opinion implying awareness of facts unavailable to the jury, a prosecutor may state his conclusion if it is fairly drawn from the evidence, and his inferences need not seem necessarily warranted. *Grubbs v. State,* 760 S.W.2d 115, 119[5, 6] (Mo. banc 1988), *cert. denied,* 490 U.S. 1085, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1989). Here, the marijuana Moss bought was in four bags. This evidence, coupled with the price ($350), supplied sufficient evidentiary support for the prosecutor's argument that appellant was an individual who handled marijuana in bulk and packaged it in smaller quantities for resale. Assuming (as the jury obviously found) appellant was the person at the Tiptons' back door, the evidence supported a finding that appellant supplied the marijuana to the Tiptons for sale to Moss.

■ Regarding the prosecutor's characterization of appellant as a professional drug dealer of whom jurors are afraid, we observe the comment came during this segment of the argument:

> "He's a professional drug dealer that you have heard about, and he's a professional drug dealer that you are afraid of. You've got to convict him because he's the person selling it for the retail business of making money, and could have sold it to Vernon Moss, could have sold it to anybody else, he doesn't care."

■ The argument was not personalized in that it did not suggest a personal danger to the jurors or their families if appellant were acquitted. *State v. Brass,* 781 S.W.2d 565, 567 (Mo.App.1989). The tenor of the argument was that appellant and others who sell drugs should be convicted. A prosecutor is permitted to argue such propositions as the prevalence of crime in the community, the personal safety of its inhabitants, and the jury's duty to uphold the law as well as inferences from its failure to convict, and such pleas may call upon common experience. *State v. Newlon,* 627 S.W.2d 606, 618–19[21] (Mo. banc 1982), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149, *reh'g denied,* 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982); *State v. Olds,* 603 S.W.2d 501, 511[14] (Mo. banc 1980).

Even if the argument here overstepped those boundaries—an issue we need not decide—it was not flagrant enough to result in manifest injustice or a miscarriage of justice. Point IV is denied.

■ Point V also concerns closing argument. Defense counsel's argument included this:

> "I'd also like us to think about where are the Tiptons today? The Tiptons are the ones that sold the marijuana to Vernon Moss. The Tiptons were the ones who do know, who would be able to tell us who was at the back door."

The prosecutor responded:

> "[Defense counsel] says where are the Tiptons? I'll tell you where the Tiptons are; [defense counsel] knows where the Tiptons are. They are awaiting to go to trial in a couple of weeks, [defense counsel] knows that. And I can't make the Tiptons testify, I can't put them on the stand and ask them about that. [Defense counsel] knows that. I can't bring them in here. I wish I could. But they are going to go to trial on their own case. They will be convicted for their case, too."

Appellant maintains the trial court committed plain error in failing to declare a mistrial *sua sponte* when the prosecutor made the above argument. Appellant acknowledges that inasmuch as no objection was made at trial, the point is reviewable for only plain error.

Appellant asserts the prosecutor's comments were false in that "the marijuana evidence in the Tiptons' case had been suppressed by the trial court prior to appellant's trial, and the Tiptons were not going to trial at that time." According to appellant, the prosecutor should have known the argument was false. Appellant surmises the jury may very likely have convicted him on the prosecutor's false assurance that the Tiptons' trial was imminent and would result in their conviction.

The facts demonstrating the falsity of the prosecutor's argument were evidently unknown to the participants at time of trial. Not only was there no objection to the argument at trial, there was no complaint about it in appellant's motion for new trial.

At the evidentiary hearing on appellant's 29.15 motion,[4] the judge ("the motion court") took judicial notice of the files of the Circuit Court of Jasper County in a case styled "State v. Rhonda Tipton" and a case styled "State v. Terrence Tipton." From those records, the motion court found the trial judge in those cases "had entered an order suppressing certain evidence on February 1, 1990 and the State of Missouri had, on February 5, 1990, filed an appeal of

---

**4.** The hearing took place October 29, 1990, some eight months after appellant's trial.

that decision...."[5]

At the 29.15 hearing, appellant presented as a witness the prosecutor who made the closing argument at appellant's trial. The prosecutor acknowledged appellant's trial occurred February 16, 1990, 15 days after entry of the suppression order in the Tipton cases.

The prosecutor explained a different prosecutor worked on the Tipton cases. The prosecutor's testimony continued:

"Q. Is it safe to say that when—and you're familiar with the Tipton case at this point, are you not, the motion to suppress in the Tipton case?

A. At this point today, I do know the result of the motion to suppress in the Tipton case.

Q. At the time of the Cobb trial, were you aware of the motion to suppress in the Tipton case?

A. At the time of the Cobb trial, I was aware that there was a motion to suppress; I was not aware that it was in the Tipton case.

Q. So were you not aware of the ruling against the State in the Tipton case?

A. I was aware—I was aware that there was—that we had lost the motion to suppress because we didn't put on any evidence. But I was not aware that it was in the Tipton case.

. . . .

Q. ... as prosecutor ... in the Cobb case, did you have any special knowledge that the Tiptons were in fact going to trial in a couple of weeks?

A. Let me put it this way; if I had known that they weren't going to trial in a couple of weeks, I wouldn't have said it to the jury."

Appellant concedes the judge who entered the suppression order in the Tipton cases was not the judge who presided at appellant's trial. There is nothing in the record even remotely suggesting that the judge who presided at appellant's trial knew about the suppression order in the

Tipton cases at the time appellant was tried. Appellant fails to explain how a trial judge can be convicted of plain error for failing to interrupt a false argument when the judge is unaware of the falsity. We have yet to meet a clairvoyant or omniscient judge. Point V is denied.

Having rejected all assignments of error in appeal 16920, we affirm the conviction and sentence.

### Appeal 17290

Point VII avers appellant was denied effective assistance of counsel at the jury trial (and the motion court erred in ruling otherwise) in that defense counsel failed to object to the portions of the prosecutor's closing argument referred to in our discussion of point IV. Appellant maintains he was prejudiced by the failure to object in that the evidence was not conclusive of guilt and the jury may very likely have convicted him "based on consideration of the improper argument."

The motion court found appellant was not denied effective assistance of counsel. Our review is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989), *cert. denied sub nom. Walker v. Missouri*, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).

To prevail on a claim of ineffective assistance of counsel, a prisoner seeking post-conviction relief must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Failure to make a meritorious objection does not demonstrate incompetence; there must be a showing that counsel's overall performance fell short of established norms and this incompetence probably affected the result. *Jones v. State*, 784 S.W.2d 789, 793[9] (Mo. banc 1990), *cert. denied*, —

---

5. The order suppressing evidence in the Tipton cases was ultimately affirmed by this Court.

*State v. Tipton*, 796 S.W.2d 109 (Mo.App.1990).

U.S. ——, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990).

 As observed in our discussion of point IV, even if the prosecutor's argument exceeded permissible limits, the breach was not flagrant. That being so, we cannot brand defense counsel ineffective for failing to object. As a matter of tactics, counsel may forego a marginal objection for fear it will be overruled, thereby emphasizing the adversary's remarks. There is no ineffective assistance where a lawyer's conduct involves reasonable discretion in trial strategy, and it is the exceptional case where a court will hold a strategic choice unsound. *State v. White*, 798 S.W.2d 694, 698[9] (Mo. banc 1990).

It was appellant's burden to prove his grounds for relief by a preponderance of the evidence. Rule 29.15(h); *Clemmons v. State*, 795 S.W.2d 414, 416[2] (Mo.App. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1689, 114 L.Ed.2d 83 (1991). He has failed to do so on the claim of ineffective assistance in point VII. It is denied.

 Point VIII declares appellant was denied effective assistance of counsel at the jury trial in that defense counsel failed to object to the segment of the prosecutor's closing argument referred to in our discussion of point V. Appellant argues the jury may have convicted him because of the prosecutor's false assurance that the Tiptons' trial was imminent and would result in their conviction.

Nothing in the record indicates defense counsel was aware of the falsity of the prosecutor's argument at the time it was made. Appellant called defense counsel as a witness at the 29.15 hearing, but did not inquire whether counsel knew the judge in the Tipton cases had suppressed the marijuana two weeks prior to appellant's trial. The record does confirm, however, that defense counsel did not represent the Tiptons. Another lawyer, Edward G. Farmer, Jr., testified at the 29.15 hearing that he had represented the Tiptons "throughout the pendency of their ... respective cases." Appellant cites no case, and we know of none, holding a lawyer can be branded ineffective for failing to object to a false argument absent a showing that he knew of the falsity.

Evidently recognizing this, appellant contends a reasonable defense lawyer would have kept abreast of developments in the Tipton cases because information from them "could prove useful" in defending appellant.

We disagree. Whether the marijuana was suppressed in the Tipton cases was immaterial to appellant's defense. He was outside the Tiptons' residence at the time the officers entered, and there is no indication he had any grounds to seek suppression of the marijuana as evidence against him. The only apparent concern defense counsel might have had regarding the Tipton cases was whether the State might induce the Tiptons to testify against appellant. We reject appellant's premise that defense counsel was derelict in failing to learn of the suppression of the marijuana in the Tipton cases.

 Alternatively, appellant asserts in point VIII that the prosecutor's argument denied appellant a fair trial and due process of law in that the argument was false when made and the prosecutor should have known it was false.

The motion court found the prosecutor did not know it was the Tipton cases where the evidence had been ordered suppressed. Appellant does not challenge that finding.

Citing *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), appellant argues that even if the prosecutor did not personally know the marijuana had been suppressed in the Tipton cases, such knowledge must be imputed to him inasmuch as a fellow prosecutor in the same office was handling the Tipton cases.

Assuming, without deciding, that knowledge of the suppression order in the Tipton cases was imputable to the prosecutor in appellant's case, we find no basis for reversal. The charges against the Tiptons were still pending at the time of appellant's trial, and the State had taken an appeal seeking reversal of the suppression order.

The prosecutor's argument was in retaliation to defense counsel's rhetorical question, "[W]here are the Tiptons today?" Defense counsel told the jury the Tiptons could disclose who was at the back door.

In response, the prosecutor told the jury the Tiptons were awaiting trial, consequently he could not put them on the stand and ask them who was at the back door.

It is reasonable to assume the Tiptons would have exercised their respective rights against self-incrimination had the prosecutor called them to the stand at appellant's trial. Charges were still pending against them and they were represented by counsel.

Therefore, most of the prosecutor's retaliation was true. The only false statement was that the Tiptons would go to trial in a couple of weeks. Inasmuch as the State's appeal in the Tipton cases had been pending less than two weeks before appellant's trial, it was obvious the Tiptons could not be tried "a couple of weeks" after appellant.

The opinion of this Court affirming the suppression order in the Tipton cases was filed September 20, 1990,[6] some eight months after appellant's trial. If we assume the affirmance made it impossible to successfully prosecute the Tiptons, it was only then that the charges against them would have been dismissed.

The significance of the prosecutor's argument was not how soon the Tiptons would be tried. The important aspect was that because the Tiptons were facing charges for their roles in the sale, the prosecutor could not present them as witnesses at appellant's trial to name the person at the back door.

■■■ Where, as here, an accused complains of a prosecutor's remarks in the rebuttal segment of argument, the court may consider whether the argument was invited. *State v. Willis*, 764 S.W.2d 678, 680 (Mo.App.1988). A prosecutor may go further by way of retaliation in answering the argument of defense counsel than

would be permitted in the first instance. *Willis*, 764 S.W.2d at 680[3].

Here, the prosecutor's remarks about the Tiptons awaiting trial were invited by defense counsel's comment about the absence of the Tiptons as witnesses. The prosecutor's rejoinder did not deny appellant a fair trial or due process of law.

Point VIII is denied. The order denying post-conviction relief is affirmed.

PREWITT, P.J., and PARRISH, J., concur.

---

6. See *State v. Tipton*, footnote 5, *supra*.