**STATE of Missouri, Respondent,**

v.

**Shurron ROBERTS, Appellant.**

**No. ED 83697.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 31, 2004.

Tim Forneris, Assistant Public Defender, Office of the Missouri Public Defender, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Shurron Roberts ("defendant"), appeals from the judgment of the Circuit Court of the City of St. Louis following a jury trial finding him guilty of the sale of a controlled substance, cocaine base, section 195.211, RSMo 2000.[1] Defendant was sentenced as a prior and persistent offender and a prior and persistent drug offender to fifteen years to be served in the Missouri Department of Corrections concurrently with defendant's federal prison sentence from another conviction. We affirm.

On November 14, 2001, the Street Corner Apprehension Team (SCAT) of the St. Louis Metropolitan Police Department set up an undercover drug operation to find and apprehend cocaine dealers in the O'Fallon neighborhood in the City of St. Louis. Undercover SCAT Officer Renwick Bovell ("Officer") posed as a potential drug buyer. Officer wore a body transmitter, a device that is used to record and transmit oral communications to other SCAT officers. Jermaine Canada ("Canada"), a narcotics middleman, led Officer to defendant's location. Officer gave Canada a previously photocopied twenty dollar bill[2] to purchase cocaine. Canada and defendant engaged in what appeared to be a hand-to-hand transaction. Canada returned to Officer's car with an object that was later determined to be cocaine base. When defendant was arrested, he had in his possession the same twenty dollar bill that Officer had previously given Canada.

Defendant was charged with a class B felony of the sale of a controlled substance in violation of section 195.211. Defendant's trial took place from July 28 to July 29, 2003. Defendant did not present any witnesses or evidence. Defendant made an oral motion for judgment of acquittal at the close of all evidence, which the trial court denied. On July 29, 2003, the jury found defendant guilty of the sale of a controlled substance. On October 9, 2003, defendant was sentenced to fifteen years' imprisonment.

As the sufficiency of the evidence is in dispute, the facts will be discussed in greater detail in Point I.

■ In his first point on appeal, defendant asserts that the trial court erred when it denied his motion for judgment of

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. The twenty dollar bill had previously been photocopied by Officer so that when the bill was recovered, the police could compare the serial numbers of the bill and photocopy to insure the bill was the same money that was used in the drug transaction.

acquittal and convicted him of the sale of controlled substance.

Section 195.211.1 provides that "it is unlawful for any person to distribute, deliver, manufacture, [or] produce . . . a controlled substance." Subsection 12 of section 195.010 states that "distribute" is defined as "to deliver other than by administering or dispensing a controlled substance." "Deliver" is defined in subsection 8 of section 195.010 as "the actual, constructive, or attempted transfer from one person to another of . . . a controlled substance . . . and includes a sale." Subsection 38 of section 195.010 defines "sale" to include a "barter, exchange, or gift."

When reviewing whether evidence is sufficient to support a criminal conviction, we accept all evidence and inferences favorable to the jury's verdict and we disregard all contrary evidence and inferences. *State v. Skaggs,* 74 S.W.3d 282, 284 (Mo. App. E.D.2002). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror could have found a defendant guilty beyond a reasonable doubt. *Id.* Great deference is given to a jury's findings. *Id.*

▌ The state must prove beyond a reasonable doubt that an accused committed each element of the crime for which he or she is charged. *State v. Baker,* 23 S.W.3d 702, 710 (Mo.App. E.D.2000). In cases where evidence of guilt is entirely circumstantial, the evidence must be consistent with the state's theory of guilt while at the same time inconsistent with a theory of innocence. *State v. Cobb,* 820 S.W.2d 704, 709 (Mo.App. S.D.1991). However, the circumstantial evidence does not need to absolutely prove guilt nor does

it need to demonstrate the impossibility of innocence. *Id.* If a defendant's hypothesis of his or her innocence is merely possible or remote, but not reasonable, it will not warrant the granting of a motion for acquittal. *State v. Horn,* 777 S.W.2d 656, 659 (Mo.App. W.D.1989).

In the instant case, defendant was charged with the class B felony of the sale of a controlled substance in that he, acting with Canada, knowingly sold cocaine base, a controlled substance, to Officer, knowing that it was a controlled substance. Defendant contends that the state did not prove beyond a reasonable doubt that defendant committed the crime for which he was charged because Officer did not search Canada before Canada's encounter with defendant and because Officer did not see defendant give Canada the cocaine. We disagree.

A reasonable juror could infer that Officer did not search Canada before Canada's encounter with defendant because this would have been fatal to the undercover drug operation. Although Officer did not see defendant give Canada the cocaine, we find that the circumstantial evidence in the record supports the trial court's judgment entered on the jury's verdict convicting defendant of selling a controlled substance.

On November 14, 2001 between 9:30 p.m. and 10:00 p.m., Officer was driving an unmarked police car when he saw Canada walking around a gas station.[3] Officer approached Canada and asked him, "do you know where I can get a dub from?"[4] Canada told him "yes" and entered into Officer's car. Canada, acting as a narcotics middleman, directed Officer to several

---

**3.** A SCAT surveillance team member tape recorded Officer's encounter with Canada. This cassette tape recording ("State's Exhibit 5") was heard by the jury and is part of the record on appeal.

**4.** Officer testified that a "dub" is street terminology for a quantity of cocaine base.

places in the neighborhood, but no one provided Canada with cocaine. After each stop Canada would tell Officer, "I've got another spot that we can go to." This process went on for about twelve minutes.

Canada then directed Officer to the 1400 block of Cass Street. There, Officer gave Canada the previously photocopied twenty dollar bill to purchase cocaine. Canada left the car with the twenty dollar bill and walked to 1442 Cass, where defendant was sitting on the top step of a porch. Canada's right hand was not clenched as he approached defendant. Officer stated, on State's Exhibit 5, something to the effect that defendant had a "nice stash" and that defendant was unwrapping something from a big cellophane bag.

Before Canada stepped on the porch, he reached his right hand into his pocket. Canada and defendant engaged in what appeared to be a hand-to-hand transaction on the porch, during which Canada clenched his right fist. Canada returned to Officer's car with his right fist still clenched. Canada handed Officer an object and told him it was "legit." This object was later determined to be .07 grams of cocaine base. At this time, Officer gave the other SCAT officers a verbal signal to indicate that the drug transaction was complete.

Following these events, defendant was arrested and taken into custody. Sergeant Adrienne Bergh patted down defendant and found in his pocket the same twenty dollar bill that Officer had given Canada for the drug transaction. In his closing argument, defendant's counsel argued that defendant may have had Officer's twenty dollar bill because Canada got change from defendant or because Canada asked defendant to hold on to the money.

■ Defendant also contends that the jury's questions to the court "demonstrate[d] that the State had not met its burden [in proving defendant committed the crime for which he was charged]." In this case, after deliberating for two hours, the jury asked the court:

> what did [defendant] get the twenty dollars for? and did the police officers say that [Canada] had his fist closed the whole time, going up to [defendant], who was sitting on the step[?]

The trial court instructed the jury, "you will [be] guided by your recollection of the evidence and the instructions which you possess." A half an hour later, the jury returned a guilty verdict. Absent a showing to the contrary, jurors are presumed to follow a court's instructions. *State v. Brasher*, 867 S.W.2d 565, 569 (Mo.App. W.D.1993). Defendant does not argue or attempt to make a showing to the contrary.

Although defendant's hypotheses as to what the transaction involved are possible, they are remote and unreasonable given the other circumstances listed above. In contrast to defendant's theory, a reasonable juror could infer from the circumstances that defendant had Officer's twenty dollar bill at the end of the transaction with Canada because defendant and Canada engaged in an exchange, or sale.

We therefore conclude that the trial court did not err when it overruled defendant's motion for judgment of acquittal and convicted defendant of selling a controlled substance. Defendant's first point is denied.

■ In his final point on appeal, defendant argues that the trial court erred in overruling his *Batson* objection to the state's peremptory strike of venireperson Sheppard.

■ To preserve a *Batson* challenge for appellate review, a timely and specific objection must be made at trial, the alleged

error must be stated in a motion for new trial, and the matter must be sufficiently raised on appeal. *State v. Shaw*, 14 S.W.3d 77, 83 (Mo.App. E.D.1999). An allegation in a motion for new trial must identify something to be reviewed by the trial court. *State v. Guidorzi*, 895 S.W.2d 225, 229 (Mo.App. S.D.1995) (finding that allegation in motion for new trial that the trial "[c]ourt erred in overruling definite objections" identified nothing to be reviewed by the trial court and was not sufficient to preserve the question of admissibility of a tape-recorded statement and transcript, although that court did review the unpreserved matter for plain error).

While Missouri courts have been lenient with the form of a *Batson* challenge in a post-trial motion, the record must clearly indicate both the defendants intention to make such a challenge and the trial courts understanding of the defendants intention. *State v. Winters*, 949 S.W.2d 264, 266 (Mo. App. S.D.1997); *See also State v. Seddens*, 878 S.W.2d 89, 93 (Mo.App. E.D.1994). In *Winters*, even though defendant incorrectly stated the law, the court held that a defendants *Batson* allegation in his post-trial motion was in sufficient form because defendant unequivocally stated that he made a *Batson* challenge at trial and that the denial of that challenge was erroneous. *Winters*, 949 S.W.2d at 267.

In this case, the record at trial indicates that defendant clearly made a timely and specific *Batson* challenge as to race. Defendants motion for a new trial contained five allegations, none of which specifically referenced his *Batson* challenge. The fifth allegation, the only relevant allegation to defendants final point on appeal, states:

> [w]ithout reiterating all arguments previously made to the Court in open court or by way of pre-trial motions, the [d]efendant renews all prior objections and

motions denied of record, to include, but not limited to, all evidentiary objections of record during the jury trial.

In contrast to the defendants post-trial motion in *Winters*, this allegation of error does not state that defendant made a *Batson* challenge at trial and that the trial courts denial of that challenge was erroneous. The trial court could not be expected to understand based on this general allegation that defendant intended to challenge the trial courts denial of his *Batson* objection to the state's peremptory strike of venireperson Sheppard. Like *Guidorzi*, this allegation identifies nothing to be reviewed by the trial court and thus lacks sufficient form.

Therefore, defendant's final point on appeal is not preserved for appellate review.

It is within an appellate court's discretion to decide whether to review an unpreserved matter for plain error. Mo. R.Crim.P. 30.20. Therefore, in the exercise of our discretion, we decline to grant such review. *See Shaw*, 14 S.W.3d at 84 (finding that plain error review of an unpreserved *Batson* challenge was not warranted).

Based on the foregoing, we affirm the judgment of the trial court.

SHERRI B. SULLIVAN and BOOKER T. SHAW, JJ., concur.